TOWNSHIP OF HAMILTON, RESPONDENT, v. MERCER COUNTY TRACTION COMPANY ET AL., APPELLANTS.

Argued November 28, 1916—Decided September 13, 1917.

1. In order to construct a street railway from terminus to terminus as authorized by the municipal ordinance, it was necessary to cross a steam railroad; the consent of the railroad company to the crossing could not be had and efforts by the street railway company to secure an order of the Chancellor and the approval

of the public utility commission were without result. *Held*, that in the absence of a legal right to cross the steam railroad a *mandamus* should not be awarded to compel the construction of the street railway.

2. A municipal ordinance authorized the construction of a street railroad from terminus to terminus. *Held*, that a *mandamus* should not be awarded to compel its construction in two unconnected sections, separated by a steam railroad, which the street railway had no legal right to cross.

On appeal from the Supreme Court, whose opinion is reported in 88 *N. J. L.* 485.

For the appellants, *George W. Macpherson* and *Frank Bergen*.

For the respondent, *Alvin W. Sykes* and *Linton Satterthwaite*.

The opinion of the court was delivered by

SWAYZE, J. The pleadings in this case as moulded by the Supreme Court consist of an alternative writ of *mandamus*, return and demurrer thereto. The return avers as follows: The Mercer County Traction Company was organized in 1899 under the "Traction act" of 1893; on August 1st, 1904, it leased all its property and franchises, except the franchise to be a corporation, to Trenton Street Railway Company; this lease was canceled October 15th, 1910, and a similar lease made to Trenton and Mercer County Traction Corporation; the township of Hamilton, by ordinance on February 7th, 1906, consented to the construction of a street railway by Mercer County Traction Company on the Allentown, Crosswicks and Trenton turnpike, beginning at the intersection of the turnpike with the boundary between Mercer and Monmouth counties, and thence westerly to a point in Yardville across and one hundred feet from and west of the railroad of the United New Jersey Railroad and Canal Company, said point being the terminus in said turnpike of a street railway owned by said Mercer County Traction Company extending

MARCH TERM, 1917.     533

*90 N. J. L.*     Hamilton Twp. v. Mercer Co. Trac. Co.

from Trenton to Yardville; the proposed street railroad, if constructed on the route prescribed in the ordinance and indicated on a map filed with the secretary of state, would connect with and might be operated in connection with the existing street railway owned and operated by appellants between Trenton and Yardville, and would be in effect a physical extension of the appellants' pre-existing street railway; the ordinance did not authorize the traction company to construct its railway across the tracks of the United New Jersey Railroad and Canal Company, and could have no legal effect until the right to cross the railroad was obtained; the proposed street railway would be of little value unless it could be connected with the railway from Trenton to Yardville, and would not have been undertaken by the appellants; the appellants, and each of them, shortly after the passage and acceptance of the ordinances, endeavored in good faith to negotiate an agreement with the United Railroads and the Pennsylvania Railroad Company, its lessee, for permission to construct street railway tracks across the railroad in order to connect with the Trenton-Yardville tracks; in order that an elevated crossing might be made the appellants purchased land on both sides of the railroad for the purpose of making a detour across the railroad above its grade, but could reach no agreement with the railroad company; appellants filed a bill in chancery for a decree authorizing the construction of the street railway across the tracks of the railroad company, which suit is now pending; in April, 1913, the appellants applied to the board of public utility commissioners for an order authorizing such crossing to be made, but the board adjourned the matter indefinitely and has never made the order. We need not recite other important averments in the return since the case can be decided upon those already set forth. The Supreme Court gave final judgment for the relators and ordered a peremptory *mandamus* requiring the appellants to forthwith complete the construction of the street railway described in the ordinance of February 7th, 1906, from the westerly terminus to North Crosswicks and hence within a reasonable time to the easterly terminus. The judg-

534    COURT OF ERRORS AND APPEALS.

Hamilton Twp. v. Mercer Co. Trac. Co.    90 N. J. L.

ment properly recognized the proposed railway as an entirety from the westerly to the easterly terminus, but permitted it to be built in two sections. It failed, however, to recognize the fact that the construction ordered was impossible since the street railway could not force its way across the tracks of the United Railroad and Canal Company. There can be no duty to be enforced by *mandamus* until there is an absolute legal obligation to do what the writ commands. To constitute such an obligation there must be an absolute right to do what is commanded. In the present case this requires not only the municipal ordinances and the acceptance of them by the street railway, but also either the assent of the railroad company or action by the Court of Chancery and the board of public utility commissioners. *Comp. Stat., p.* 4235, *pl.* 32; *Pamph. L.* 1911, *p.* 383, § 21. The Supreme Court suggested that this contingency was within the contemplation of both parties when the ordinance was passed and accepted. The necessity of obtaining the assent of the railroad company or the decree of the Chancellor must have been within the contemplation of both since they are presumed to know the statute. What effect this knowledge of the parties of a condition necessary to performance resting on the will of a court, and subsequently by legislative enactment the will of a public administrative body, may have upon the obligation of the contract we need not decide.

The prerogative writ of *mandamus* is not used for the enforcement of a mere contract between parties. *Newark* v. *North Jersey Street Railroad Co.,* 73 *N. J. L.* 265. It is used only to enforce a public duty which may sometimes grow out of a contract as well as out of a statute. *Wilbur* v. *Trenton Passenger Railway Co.,* 57 *Id.* 212; *Bridgeton* v. *Traction Co.,* 62 *Id.* 592; *Rutherford* v. *Hudson River Traction Co.,* 73 *Id.* 237; *Pleasantville* v. *Atlantic City Traction Co.,* 75 *Id.* 279; *Camden* v. *Public Service Railway Co.,* 82 *Id.* 246; but there can be no public duty to do what the law, out of considerations of the public safety, forbids. To apply the principle to the present case, there can be no public duty to construct the street railway across the railroad until the

statutory requirements are complied with. To hold otherwise would be equivalent to permitting a municipality and a street railway company to override a public statute based on the highest considerations of public safety. If there was a valid agreement between the municipality and the street railway, and that agreement imposed an absolute obligation on the railway company and not an obligation conditional upon the proposed performance being permitted by law (*Poll. Cont.* 405; *Baily* v. *DeCrespigny*, L. R., 4 Q. B. 178; *Louisville and Nashville, &c., Railroad Co.* v. *Mottley*, 219 U. S. 467; *Pom. Cont.*, § 295), the most the municipality could do in case of breach of contract would be to sue the street railway company for damages; but that is a very different remedy from a *mandamus* commanding them to do what the law forbids. Even if the contract required the street railway company to exert its powers to secure the right to cross, the court could at the utmost go no further than to command it to exert its power. In that event, we would be bound to assume that the Chancellor and the public utility commission would act justly in furtherance of the public policy evinced by the statute. We could not control the action of either.

It is suggested that the railway company did not act in good faith; but as good faith is averred in the return and admitted by the demurrer, and as the company in fact initiated proceedings before the Chancellor (still pending), and applied to the board of public utility commissioners and brought the case to hearing, we are unable to see how bad faith can properly be imputed. The Supreme Court assumed that the effort was made in good faith. If that were not so, the Supreme Court still could not, legally, require the street railway company to do something which our statutes forbid. The furthest its writ of *mandamus* could go would be to require the railway company to press to a conclusion the pending proceeding before the Chancellor; it could hardly compel the company to undo the act of the board of public utility commissioners in adjourning the matter indefinitely; and it surely could not dictate to either tribunal what decision to

render. Until a favorable decision is reached, the defendants are under no public duty to build their railway across the railroad tracks.

The Supreme Court realized the difficulty, and to avoid it suggested that if the crossing of the railroad was impossible, the street railway company might still exercise their franchise in behalf of the public without reference to the steam railroad crossing by completing the construction and operating their line on either side thereof. It is enough to say that such is not the judgment entered nor the command of the writ awarded by the court, which commands construction and operation from terminus to terminus. The Supreme Court might indeed amend the judgment when the record is remitted but for the fact that there is an objection which is insuperable. The suggestion of the opinion amounts to changing an obligation to build one street railway into an obligation to build two. It involves the holding that a company which has been incorporated and authorized to build a single and continuous line between fixed termini may be compelled to build two separate lines with different termini. We cannot know the practical effect of such a change. The demurrer admits the averment of the return that such a railroad would be of little value and would not have been undertaken by the respondents. It is enough for us to know that the company has not contracted to build two separate lines and is not authorized by its charter or by the township ordinances to do so. Both the public and the company are interested in having exactly what the charter and the ordinances provide; it is not for the court to give them something which it may think nearly as good. As was said in *Bridgeton* v. *Traction Co.,* 62 *N. J. L.* 592 (at *p.* 600), "it became the duty of the respondent company to operate the railway over its entire route under the franchises as acquired by it." This duty could not be performed by operation over a part of the route only. The company in that case had the right to cross the bridge; it could not have performed its public duty by merely running to the bridge on each side and compelling its passengers to walk across. In this case

the company has no right to cross the railroad, but the securing of that right was within the contemplation of both the municipality and the street railway company; and the line from terminus to terminus cannot be cut in two, and the company absolved by a partial performance of an entire contract.

The judgment must be reversed and the record remitted to the end that judgment be entered for the defendants. The defendants are entitled to costs.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Swayze, Parker, Bergen, Kalisch, White, Heppenheimer, Williams, Taylor, Gardner, JJ.   11.